**UNITED STATES of America, Plaintiff-Appellee Cross-Appellant,**

**v.**

**Bobby Joe CHAPMAN, Richard Melvin, Edward A. Coker, and Clark L. Darnell, Defendants-Appellants Cross-Appellees.**

**No. 76–2851.**

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1977.

---

William M. Ravkind, Jerry W. Biesel, Dallas, Tex., for defendants-appellants cross-appellees.

Michael P. Carnes, U. S. Atty., Fort Worth, Tex., Kenneth J. Mighell, Charles D. Cabaniss, Asst. U. S. Attys., Dallas, Tex., William W. Guild, Atty., John G. Truelson, Trial Atty., Tax Div., Dept. of Justice, Dallas, Tex., Michael J. Roach, Atty., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Sect., Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D. C. for plaintiff-appellee cross-appellant.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges:

CLARK, Circuit Judge:

Bobby Joe Chapman and others[1] were indicted on January 18, 1973, in the Northern District of Texas for conducting, managing, supervising, directing and owning an illegal gambling business in violation of 18 U.S.C.A. § 1955 (Supp.1977). Information concerning the gambling operations was in part acquired through court-ordered wiretaps, which in turn led to a search warrant that uncovered other evidence. The wiretap order was procured through information provided by unnamed informants. Prior to trial, Chapman and the other defendants moved for disclosure of the names of these informants. The Government moved to dismiss the indictments, apparently in order to avoid disclosure of the informants' names. The district judge granted the Government's motion. On the same day, May 3, 1973, the court entered this brief order from which the present procedures have evolved:

ORDER OF RETURN OF SEIZED
MATERIAL

On motion of the Government, the Court having dismissed the above numbered cause, instructs the Government, and all Divisions thereof, to return any and all goods seized from the defendants in the above entitled and numbered cause during the course of the investigation.

There is evidence that approximately $54,-000 had been seized, as well as gambling paraphernalia such as line slips, bet slips, and other materials indicating the scope of the gambling operation. No written motion was filed and no basis appears in the record for either the oral motion or the court's order. The Government contends that the order was merely a "housecleaning" detail made in the process of closing the file. It is at least clear that the district court did not reach or decide the constitutionality of the search uncovering these materials.

No further effort was made by the Government to prosecute Chapman. However, in 1976 the defendants named in the 1973 indictment were advised that wagering taxes would be assessed against them. In attempting to convince the Internal Revenue Service that such assessments were improper, defendants contended to the Ser-

---

1. Philip S. Bosco, Burt G. Armstrong, Carmel Bowers, Leon Haas, Jerry H. Wood, Paul Orman and Robby Chapman.

vice that copies made from the materials seized in 1973 could not be used to support the assessments because they had been improperly withheld in violation of the order to return. When these attempts were unavailing, defendants moved the same district judge and under the same docket number assigned to the 1973 criminal prosecution (1) to hold the United States Attorney in contempt for copying tape recordings and documents taken from defendants before returning the tapes and documents as required by the May 3, 1973 order, (2) to compel the return of the copies retained, and (3) to enjoin the use of such copies in the tax collection proceedings. The judge held that her 1973 order to return "any and all goods seized from the defendants" had not been violated by making and keeping copies before return of the originals to the defendants. Chapman's motion to cite for contempt the United States Attorney against whom the 1973 order had been directed was denied. Although the court indicated that the return of copies had not been within the ambit of the 1973 order for purposes of contempt, she required that the Service return these copies to defendants but, pending the resolution of the present appeal, that they be delivered for safekeeping to the registry of the court. Finally, the court refused to enjoin the Government from making wagering tax assessments against Chapman and the others. Defendants appeal from refusal of their request for injunctive relief and the United States cross appeals from the order to deliver up the copies it made, contending that the court abused its discretion in assuming jurisdiction to require return of the copies retained. We reverse the determination that the copies must be delivered to Chapman, and affirm the denial of injunctive relief.

### Delivery of Copies

■ The correctness of the 1973 order to return seized materials to the defendants is not attacked. Rather, the United States limits its challenge to the 1976 order to return the copies it made. Once the Internal Revenue Service has properly received documents, it may generally make copies of them. *United States v. Ponder*, 444 F.2d 816, 820 (5th Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972). There, Ponder's records were voluntarily submitted to the Internal Revenue Service during a civil audit. Subsequently Ponder requested that these documents be returned, but, as the court emphasized, without presenting any constitutional challenge to retention by the Service. The Service refused Ponder's request and continued its examination and copying of the records. The court concluded that having once voluntarily submitted records in response to a summons, a taxpayer may reasonably assume that the Government would conclude its examination and copy such records prior to return. *Ponder* is not dispositive of the present controversy. Chapman is not attempting to rescind a voluntarily granted authorization to examine documents before the Service can reasonably complete copying. *Cf. Frey v. United States*, 558 F.2d 270, 273 (5th Cir. 1977). Instead the question to be answered is whether an order to return original documents carries with it a right to the return of copies made while the Service was properly in possession of the originals.

■ The United States would have us decide this issue as one of jurisdiction, or more precisely, anomalous jurisdiction.[2] This misses the mark. The district court's jurisdiction to adjudicate in the 1976 proceedings continues to flow from the court's initial jurisdiction over the related 1973 criminal case and the materials which came under the court's control in connection therewith. The 1976 return order and other procedures were directly tied to the court's 1973 order. Indeed, they sought to have the United States Attorney held in contempt for a violation of the earlier order. Chapman also sought to have the 1973

---

**2.** This circuit's authorities on the subject are *Richey v. Smith*, 515 F.2d 1239 (1975) and *Hunsucker v. Phinney*, 497 F.2d 29 (1974). Both are discussed in detail later in this opinion.

order interpreted to encompass the return of copies as well as the original documents. Even though the district court determined its 1973 order did not include the return of copies, the 1976 order requiring delivery of the copies to Chapman is no more than an exercise of the court's power to interpret its former decree. It continues to draw jurisdictional support from its connection to the earlier proceedings.

Our decision that the court had adjudicatory power over the parties and subject matter brings us to consideration of the merits of the portion of the order requiring the copies to be returned. The precise issue presented in the case at bar is novel. As we have stated, *Ponder, supra,* is not a perfect precedent. This circuit's treatment of the anomalous jurisdiction doctrine is similarly not apropos since jurisdiction is present here on other grounds. Nonetheless, the equitable principles set out in those decisions do have a strong bearing on the resolution of the merits of Chapman's case.

In *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975), documents were seized from Hunsucker pursuant to a search warrant. These materials led to criminal charges against him, but the charges were subsequently dismissed. He attempted to enjoin the use of these materials in any civil action by the Internal Revenue Service, contending that this evidence was illegally seized. The district court denied relief and the Fifth Circuit affirmed.

The doctrine of anomalous jurisdiction projects the adjudicatory authority of a court to cover actions for the suppression or return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence. The theoretical basis of the doctrine has been described as the power of the court to " 'reach forward to control the improper preparation of evidence which is to be used in the case coming before it, and . . . by summary procedure [to] restrain oppressive or unlawful conduct of its own officers.' " *Foley v. United States,* 64

F.2d 1, 3 (5th Cir.), *cert. denied,* 289 U.S. 762, 53 S.Ct. 796, 77 L.Ed. 1505 (1933), *quoted in Hunsucker, supra* at 32–33 n.3. The *Hunsucker* court also set out certain equitable considerations which condition the use of the doctrine. The foremost consideration is whether the government in seizing the property displayed a "callous disregard" for the constitutional rights of the taxpayer. 497 F.2d at 34.

Additional factors are whether the plaintiff has an individual interest in and need for the material; has an adequate remedy at law; or, would be irreparably injured by denial of the return. *Richey v. Smith,* 515 F.2d 1239, 1243–44 (5th Cir. 1975). *Richey* applied the *Hunsucker* reasoning in a case by a taxpayer who was attempting to force the return of documents that he had voluntarily permitted the Internal Revenue Service to examine and remove. The taxpayer argued that the agents did not inform him of his *Miranda*[3] rights in a meaningful fashion and that the agents threatened to subpoena the records if they were not released voluntarily. The *Richey* court did not resolve the controversy, but in remanding the case for consideration in light of *Hunsucker,* it elaborated on the meaning of *Hunsucker's* equitable principles. The indispensability of an "accurate alleg[ation]" of "callous disregard" was emphasized. No such allegation or showing has ever been made in the present case. The initial order to return property in 1973 was not based on any showing that constitutional rights of the defendants had been violated. In the 1976 hearing, Chapman sought to establish that his initial motion included return of copies as well as the originals. He urged that the only reason he wanted the documents returned initially was to prevent their evidentiary use in future proceedings. That this originally was his only intention is open to question since a substantial amount of cash had also been seized. Regardless of his intent in 1973, he made no proof in the 1976 proceedings of callous disregard of his rights.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Hunsucker's* other factors are also lacking. In considering whether a plaintiff has a sufficient individual interest in and need for the material, the *Richey* opinion indicated that if the items sought are such materials as bet slips or wager tickets, the plaintiffs' interest in these materials would not be a weighty factor. *Richey, supra* at 1243 n.9. The factor of irreparable injury encompasses such matters as whether the materials would lead to a criminal prosecution. *Id.* at 1243 n.10. There does not appear to be a likelihood the Government will attempt to renew the prosecution of Chapman; certainly no effort has been made by Chapman to argue that such a possibility exists. The final consideration is whether Chapman would have an adequate remedy at law. This includes the existence of a forum to redress the alleged violation of rights. No weight can be assigned to this factor because Chapman did not assert that any rights had been violated, *i. e.,* that there has been a callous disregard for his constitutional rights or that a substantial interest in property is jeopardized by retention of the copies. Although the district court's right to adjudicate does not depend on anomalous jurisdiction in the case *sub judice,* the equitable considerations which spring from *Hunsucker* and *Richey* indicate that Chapman's motion for return should be denied on the merits.

Other imperfect analogies are also viable enough to warrant consideration developing today's precedent. In *United States v. Wallace & Tiernan Co.,* 336 U.S. 793, 800, 69 S.Ct. 824, 828, 93 L.Ed. 1042 (1948) a grand jury which had subpoenaed evidence was subsequently held to have been illegally constituted because women had been denied service. The indictment against the defendant was dismissed. Since the grand jury was illegally constituted its subpoenas were also improper. The Court stated that "dismissal of the pending indictment after holding the grand jury illegal created the situation where appellees were entitled to

return of their papers as a matter of course." *Id.* It also reasoned that "return of the photostats, like return of the originals, necessarily followed from the dismissal of the indictment." *Id.* at 801, 69 S.Ct. at 828. Since the only basis for seizure of the original documents and the possession of the copies in *Wallace & Tiernan* was the subpoena issued by a body that had no legal right to exist or coerce evidence, that case is distinct from this one. It was not the *fact* of the dismissal of the indictment in *Wallace & Tiernan,* but the *reason* therefor that required the result the Court announced.[4]

*Wallace & Tiernan* and the grand jury subpoena cases which have followed involve discreet, limited proceedings in a clearly circumscribed arena of time and subject matter in which information acquired is to be used. No such delineation and limitation of use is to be found here.

■ In discharging its multi-faceted duty to faithfully execute the laws, the executive department must prosecute criminal cases and collect taxes as well. If in the course of its prosecution efforts it discovers evidence of unpaid tax obligations or criminal violations of tax laws, its duty to preserve the fisc and execute the law requires that it attempt to effect collection or institute prosecution. Standing alone, the combination of these duties might be taken to indicate that it must retain copies of information needed for tax collection when a criminal proceeding is terminated. This ought not be considered an absolute prerogative, however. *Wallace & Tiernan, Hunsucker* and *Richey* teach as much.

■ If the Government comes by evidence of tax obligations through means which callously disregard a citizen's constitutional rights, the naked possession of such information is not a basis for retention and use. If the information is acquired illegally a question would be presented which we do

---

4. We note *United States v. Moore,* 423 F.Supp. 858 (S.D.W.Va.1976) to express our disagreement with its sweeping interpretation of *Wallace & Tiernan. Moore,* also set in the grand jury context, would require return of materials even if lawfully acquired "as a matter of course" except on a showing by the Government of immediate need in pending litigation.

**408**

not face and need not resolve today. Our case involves copies of information come by legally and with due process accorded. *Ponder* authorizes copies to be made. We are not faced with conduct which was intended to evade or defeat the district court's original return order. We have only a question of whether an order to return originals extinguished the existing right to return and use copies made. The author of that order has interpreted it not to reach the copies which are the subject of the present controversy. We also note that this court has recently held that the statutes governing wiretaps expressly allow evidence so gathered in a criminal proceeding to be used in a civil tax assessment suit. *Fleming v. United States*, 547 F.2d 872 (5th Cir. 1977).

▮ Considering the facts here in light of all related precedents, we conclude that the district court erred in ordering the Government to deliver up the copies it had made of information legally obtained from these defendants.

*Injunction*

▮ Chapman's appeal from the denial of an injunction must also be rejected. Generally, tax assessments may not be enjoined. 26 U.S.C. § 7421(b) (1967). In *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court held that before an injunction to bar an assessment could issue, it must appear under the most liberal view of the law and the facts that the government could not establish its claim and that the taxpayer would suffer irreparable injury without an injunction. In *United States v. Janis*, 428 U.S. 433, 441, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976), the Court held that if information that formed the sole support for an assessment was inadmissible, there would be no support for that assessment and it would be "without rational foundation." No showing has been made that any illegality attended the initial seizure of the originals. Clearly under *Fleming v. United States, supra*, no general bar exists to use of these materials in a subsequent civil ac-

tion. Since we have held that the copies of evidence seized in 1973 were properly retained by the Government, the argument that any wagering tax assessment should be enjoined is meritless. Chapman and the other defendants may still raise their Fourth Amendment claims during any wagering tax assessment suit. The district court properly denied the requested injunction.

AFFIRMED IN PART AND IN PART REVERSED AND REMANDED.