**SOVEREIGN NEWS CO.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 80–3197.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1981.

Decided Oct. 6, 1982.

Rehearing Denied Nov. 3, 1982.

Rehearing and Rehearing En Banc
Denied Jan. 11, 1983.

Bernard Berkman (argued), Cleveland, Ohio, for plaintiff-appellant.

Steven Olah, U.S. Dept. of Justice, Cleveland, Ohio, Patty Merkamp Stemler (argued), U.S. Dept. of Justice, Appellate Section, Criminal Div., Washington, D.C., for defendant-appellee.

Before MERRITT and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The Sovereign News Company appeals an order denying a motion for the return of copies of property seized during an obscenity investigation. The United States seized certain films, books, and business records during the investigation which culminated in a 1978 trial and acquittal. After the trial, the government returned all original evidence, but retained copies of the business

records. Sovereign News then filed this motion under Fed.R.Crim.P. 41(e), claiming that the government must also return the copies because the originals were illegally seized. In 1976, while the obscenity proceedings were pending, Sovereign News filed a similar motion relating to the original evidence. This court held that it did not have jurisdiction to hear the 1976 motion because of the ongoing obscenity prosecution. *Sovereign News Company v. United States,* 544 F.2d 909 (6th Cir. 1976) (per curiam), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 73 (1977). In the present matter, the United States urges us to reach a similar holding of "no jurisdiction" because the government claims the business records in question are now relevant to an ongoing criminal tax investigation.

Sovereign News, on the other hand, contends that the government obtained the business records as the result of two illegal searches on March 19 and 25, 1975, made in reliance on invalid search warrants.

Both parties' arguments are without merit. We assert jurisdiction over the appeal and affirm the decision of the District Court. However, we hold that when the government has no further legitimate use for the records, it must return the copies as well as the originals.

## I. Jurisdiction

The government bases its jurisdictional argument on our decision in the first *Sovereign News* case and *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). In *DiBella,* the Supreme Court held that the denial of a motion for the return of property is appealable only if it is not tied to a criminal prosecution *in esse, i.e.,* in progress. 369 U.S. at 131–32, 82 S.Ct. at 660. However, if a prosecution is in progress, "[the 41(e) motion] shall be treated also as a motion to suppress under Rule 12." Fed.R.Crim.P. 41(e). Motions to suppress evidence are "truly interlocutory" and not appealable. *DiBella v. United States,* 369 U.S. at 131, 82 S.Ct. at 660. *Cogen v. United States,* 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929). The government contends that since a grand jury allegedly has been empanelled to hear the results of the tax investigation, we must apply the *DiBella* rule again. We disagree.

■ The government admits that it did not raise this question before the District Court and that the issue does not appear on the record. A party may not by-pass the fact-finding process of the lower court and introduce new facts in its brief on appeal. *Richardson v. Blanton,* 597 F.2d 1078, 1079 (6th Cir. 1979), *cert. denied,* 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979). Therefore, we decline to exercise any discretion we might have under the "plain error" doctrine. Fed.R.Crim.P. 52(b). Fed.R.App.P. 10(e). *United States v. Bowling,* 351 F.2d 236, 241 (6th Cir. 1965), *cert. denied,* 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966). Additionally, the criminal prosecution must be "in being" to render a 41(b) motion interlocutory. A criminal prosecution is not "in being" if it is still in the investigatory stage. *Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16 (7th Cir. 1978).

■ Because no indictment has been issued and no charges have been filed in any tax proceeding, the District Court's decision is a final appealable order. While we do not establish any hard and fast rule for determining when a criminal prosecution becomes "in being" for purposes of the *DiBella* rule, we find that the mere possibility of a prosecution is too remote "to deprive the district court's order of finality." *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297, 1301 (3d Cir. 1978). In the present case, the government seized appellant's business records in 1975 for an obscenity investigation which ended in 1978. It is now 1982. We will not permit the government to characterize the present appeal as "interlocutory" because the same evidence may or may not be relevant to a completely different investigation. In so doing, we would postpone appellant's access to appellate review indefinitely. We do not interpret *DiBella* to require such a result. *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d at 1301. *See also Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.

1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Richey v. Smith,* 515 F.2d 1239 (5th Cir. 1975).

## II. The Searches

### A. The First Search

The government conducted the first search on March 19, 1975. Sovereign News challenges the validity of that search on two grounds. First, it contends that the search warrant was invalid because of a misrepresentation by the issuing magistrate. Second, Sovereign News contends that the government agents committed a separate illegal seizure by taking notes of other evidence unrelated to the items listed in the search warrant.

On March 14, FBI Agent George Grotz presented ten films and several stacks of magazines to Magistrate Herbert T. Maher. Magistrate Maher viewed between three and five of the films in their entirety. He then viewed selected sections of other films by holding them up to a light to determine if they were similar to the other films. Finally, he examined the contents of the top magazine in each stack before him.

On March 18, Grotz and United States Postal Inspector Ronald Baranowski appeared before Maher seeking a search warrant for the premises of Sovereign News. In support of the warrant, Grotz and Baranowski submitted an affidavit which listed the titles of the ten films and forty-nine magazines which Grotz and Baranowski described as obscene and believed to be in Sovereign News' warehouse. The affidavit stated that, based on information received from a confidential informant, federal agents in Texas had intercepted these films and magazines in packages mailed by Sovereign News in Cleveland to an "adult bookstore" ·in Fort Worth. The affidavit stated that Agent Grotz had reviewed the contents of all the items listed and described those contents as depicting "acts of sexual intercourse, fallatio [sic], cunnilingus, analingus, ejaculation and masturbation." The remainder of the thirty-three-page affidavit detailed the facts and circumstances supporting the belief that the Sovereign News Company was engaged in the interstate transportation of similar magazines and films.

■ On the basis of the affidavit and his own examination, Magistrate Maher issued a search warrant which authorized the seizure of three evidentiary copies of each of the ten films and forty-nine magazines named in the affidavit. The magistrate attached the affidavit to the warrant as Exhibit B and attached a list of the films and magazines as Exhibit A. The warrant also authorized the seizure of "records, receipts, notations, bills of lading, journals, ledgers, billing invoices, inventories and other documents reflecting the importation, receipt, and shipment of the aforementioned obscene material in interstate commerce or by the U.S. Postal Service." In the space reserved for the "facts tending to establish the foregoing grounds for issuance of a Search Warrant," Magistrate Maher first listed "See attached affidavit: Exhibit B." He then added that "[o]n March 14, 1975, U.S. Magistrate Herbert T. Maher was presented with and did examine copies of the magazines and motion picture films listed in Exhibit A."

Sovereign News argues that this misstatement on the face of the warrant invalidated the warrant under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Supreme Court held that a defendant could challenge the veracity of a warrant affidavit. *Id.* at 165, 98 S.Ct. at 2681. The Court sought to avoid deception of the magistrate by the affiant. The danger of deception does not exist here. Sovereign News does not contend that the affidavit was false or misleading in any way. Therefore, *Franks,* which concerns false affidavits, does not control the instant case.

Furthermore, Magistrate Maher went beyond the law's requirements by personally examining the target materials. He could have issued the warrant on the basis of the affidavit alone. Instead, he investigated a representative sample of the materials presented to him. *United States v. Espino-*

*za,* 641 F.2d 153, 162–64 (4th Cir. 1981), *cert. denied,* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981); *United States v. Thomas,* 613 F.2d 787, 790 (10th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980). *United States v. Middleton,* 599 F.2d 1349 (5th Cir. 1979). In this case, as in *Middleton,* the affidavit "related these passages in graphic detail, thereby enabling the magistrate 'to focus searchingly on the question of obscenity.'" 599 F.2d at 1359. Magistrate Maher's action was a good faith effort to protect the appellant's rights. His statement on the warrant did not compromise the validity of the information he had received and was at worst a superfluous technical error. We will not penalize the law enforcement authorities by overturning this otherwise valid warrant. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Sovereign News also argues that Magistrate Maher's misstatement evidenced bias on his part and, therefore, makes the warrant invalid under *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). In *Lo-Ji,* the magistrate issued an essentially blank search warrant which he completed after accompanying the police on their search of an adult bookstore. As a result, the magistrate became a member of the investigating unit. That is not the case here. Magistrate Maher's statement is insufficient to destroy his status as a "neutral and detached magistrate." *Coolidge v. New Hampshire,* 403 U.S. 443, 449–53, 91 S.Ct. 2022, 2029–31, 29 L.Ed.2d 564 (1971).

Appellant next argues that the taking of notes by the agents constitutes an illegal search and seizure. In support of this argument, Sovereign News cites this court's decision in *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). The *Gray* case involved the search of a house for evidence of a "moonshine" operation. During the search, the officers saw several rifles in the suspect's closet. They removed the rifles to another room and copied the serial numbers. A trace of the numbers revealed the rifles to be stolen property. We reversed the defendant's conviction for violation of firearms statutes, 18 U.S.C. §§ 922(h)(1) and 922(j), because the officers had "seized" the rifles which were not listed in the search warrant. "[T]here was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers have knowledge that the rifles were evidence of any other crime." 484 F.2d at 355. The police may not seize "one thing under a warrant describing another." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

However, in this case, there is an obvious nexus between the items "seized" by the officer's notation and the focus of the search warrant. The officers who searched the premises of Sovereign News did not open boxes containing materials not listed in the warrant nor did they peer into areas which could not have contained the specified items. The officers noted the titles of films and magazines which were in plain view during the course of their search. In addition, they took note of other business records. The government used these notes to prepare a second search warrant. The information related to the warrant being executed and was gathered in an unobtrusive manner. Thus, the facts meet the primary requirements of the "plain view" doctrine. Briefly, those requirements are: (a) the officer must be lawfully on the premises; (b) the incriminating nature of the evidence seized must be immediately apparent; and (c) the discovery must be inadvertent. *See Coolidge v. New Hampshire,* 403 U.S. at 465–71, 91 S.Ct. at 2037–40.

The facts here also fit *United States v. Espinoza.* In *Espinoza,* agents photographed the defendant's office and warehouse during an obscenity investigation. The court excused the "seizure" of the agent's "mental images" under the plain view exception. The photographer was lawfully present on the premises; the images were evidence of criminal activity; and the evidence was found inadvertently. *United States v. Espinoza,* 641 F.2d at 166–67.

Appellant argues that the "seizure" by note-taking was neither inadvertent nor properly limited to evidence whose incriminating nature was immediately apparent. Neither argument is persuasive. First, the fact that the officers expected to find non-listed, obscene materials during the warrant's execution does not rule out inadvertence.

> There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such an expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery.

*United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir. 1979). Second, the affidavit submitted for the second warrant described the outside appearance of the noted materials in graphic detail. This description was sufficient to justify noting the materials as possible evidence of criminal activity directly related to the activity under investigation.

We conclude that the note-taking in the present case was not an illegal seizure. The notes concerned objects related to the search in progress; the objects were in plain view and the objects were discovered inadvertently.

### B. The Second Search

On March 25, Agent Grotz returned to Magistrate Maher to obtain a warrant for another search of Sovereign News' premises. Grotz submitted an affidavit which reviewed the results of the first search and listed the magazines and films observed but not seized. The affidavit noted that certain magazines were seen "in plain view" and stated that the magazine covers "vividly depicted obscene sexual activities between males and females, males and males, females and females, including acts of fella-tio, cunnilingus, and ejaculation, of the same kind which were seized pursuant to the aforementioned search warrant." In addition, the affidavit stated that numerous boxes of eight millimeter films were observed "in plain view" and that the covers of the boxes "also depicted obscene sexual activities between males and females, males and males, females and females, which included obscene sexual acts of fellatio, cunnilingus and ejaculation and masturbation." The affidavit then listed the titles of the magazines and films which were seen in plain view. Furthermore, the affidavit listed certain business records observed during the search "reflecting the ongoing interstate shipments of obscene material." Finally, the affidavit described an FBI investigation concerning a recent shipment of obscene magazines from a company in San Fernando, California, to Sovereign News.

After examining the affidavit, Magistrate Maher issued the requested warrant. The warrant authorized the seizure of three evidentiary copies of each of the listed films and magazines as well as "other magazines and movies of the same kind and nature." The warrant also authorized the seizure of "records, receipts, notations, bills of lading, journals, ledgers, billing invoices, inventories, and other documents reflecting the importation, receipt, and shipment" of seizable publications as well as "documents reflecting the corporate structure of Sovereign News Company and any of its affiliate companies." .

Sovereign News attacks the warrant on the grounds that (1) there was not enough probable cause shown and that (2) the warrant was impermissibly broad. Again, we do not agree.

First, Sovereign News argues that *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), invalidates the warrant in question. In *Marcus,* the Supreme Court invalidated a warrant based "on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene." 367 U.S. at 731–32, 81 S.Ct. at

1715–16. The *Marcus* warrant did not contain either a list or a specific description of the publications to be seized. Rather, the warrant allowed the officers to make "ad hoc decisions" with complete discretion. 367 U.S. at 732, 81 S.Ct. at 1716.

Appellant also relies upon *Lee Art Theatre v. Virginia*, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), in which the Supreme Court invalidated a warrant which stated only the title of the pictures and "that the officer had determined from personal observation of them and of the billboard in front of the theatre that the films were obscene." 392 U.S. at 636, 88 S.Ct. at 2104. The Court invalidated the warrant because the justice of the peace issued the warrant "solely upon the conclusory assertions of the police officer" and "without any inquiry . . . into the factual basis for the officer's conclusions." 392 U.S. at 637, 88 S.Ct. at 2104.

■ Conclusions alone are insufficient to support a warrant, as are descriptions of only the titles or covers of the materials. *See, e.g., United States v. Tupler*, 564 F.2d 1294 (9th Cir. 1977). The magistrate's decision must rest upon a consideration of the contents of the work as a whole. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Since the underlying affidavit, in the present case, provided only the titles and descriptions of the materials covers, the second warrant, when viewed alone, would fail the constitutional test.

■ However, we cannot view the second warrant in a vacuum. The Supreme Court stated that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). The same magistrate issued both warrants only seven days apart at the request of the same agent who was conducting the same investigation. The second affidavit recounted both the first search and the nature of the items collected. The affidavit then provided a list of materials whose titles and covers strongly suggested that they were of the same

variety as those already seized. This court has allowed probable cause to be established by reading related affidavits in conjunction with one another. *United States v. Manufacturers National Bank of Detroit*, 536 F.2d 699 (6th Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 749 (1977).

The October 7th affidavit did not contain the detailed information concerning the Detroit numbers operations which was set forth in the affidavit of the previous day. After repeating the opening paragraphs of the earlier affidavit verbatim, it was limited to a statement of the results of the search of the Wingate residence and the assertion that the evidence gained in this search established probable cause for a search of safety deposit box # 127. The magistrate was entitled to consider the October 6th affidavit in conjunction with the one presented the following day in determining whether probable cause had been established for a search of the bank box of appellants. Both affidavits referred to the same eighteen-month investigation and the alleged complicity of James Wingate in the Detroit numbers operations. The second affidavit referred specifically to the search warrant which the magistrate had issued the previous day.

536 F.2d at 702. *See also United States v. Dudek*, 560 F.2d 1288 (6th Cir. 1977), *cert. denied*, 434 U.S. 1037, 98 S.Ct. 774, 54 L.Ed.2d 786 (1978); *United States v. Cortellesso*, 601 F.2d 28 (6th Cir. 1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).

The two warrants read together establish a sufficient nexus between the contents of items seized in the first search and the contents of the items described in the second search warrant. Because the magistrate and the investigating officer had viewed the contents of the items seized in the first search, they had probable cause to believe the materials listed in the second warrant were obscene.

In reviewing this case, we must remember that the Supreme Court has specifically

stated that the magistrate need not view a film before seizing it. *Heller v. New York,* 413 U.S. 483, 488, 93 S.Ct. 2789, 2792, 37 L.Ed.2d 745 (1973). "In dealing with probable cause . . . as the very name implies, we deal with probabilities." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). Furthermore, "deference is to be accorded an independent judicial officer's finding of probable cause, with doubtful cases governed largely by the preference which our legal system gives to warrants." *United States v. Jenkins,* 525 F.2d 819, 824 (6th Cir. 1975). *See Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

In summary, we have already found that the initial search complied with the rule of *Marcus v. Search Warrant.* Rather than seizing other apparently obscene material, the agents recorded what they observed in plain view. The agents could not view the *contents* of the material without violating the appellant's privacy rights and other rights under the First and Fourth Amendments. *See, e.g., United States v. Gray.* Therefore, they did the only thing they could do. They returned to the magistrate and sought his independent determination concerning probable cause to seize materials which appeared to be of a similar nature. The materials bore similar pornographic covers and suggestive titles and were in the same location as the first group of materials. Thus, viewing the second affidavit in light of the existing circumstances and the results of the first search, the magistrate had ample evidence for a finding of probable cause under the *Miller* standard.

Appellant contends that the second warrant is facially overbroad because of the phrase which authorizes the seizure of "other magazines and movies of the same kind and nature." Appellant argues that this clause turns the warrant into a "general warrant," or "a general, exploratory rummaging in a person's belongings" which the Fourth Amendment prohibits. *Coolidge v. New Hampshire,* 403 U.S. at 467, 91 S.Ct. at 2038. This charge is even more serious where the items to be seized have the presumptive protection of the First Amend-

ment—*i.e.,* books and the ideas they contain. *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965).

 However, appellant admits that the agents seized only magazines and movies listed in the exhibit attached to the warrant. Therefore, the materials received the required protection under the second warrant. We refuse to invalidate the entire warrant as appellant requests. Where the police and the issuing magistrate have listed the titles of the primary targets of the search, we will not invalidate the entire warrant. Rather, we will sever and invalidate those portions containing the overbroad language and allow the items seized under the proper section to stand as evidence. *United States v. Espinoza,* 641 F.2d at 164–65; *United States v. Torch,* 609 F.2d 1088, 1089–90 (4th Cir. 1979), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). *See also* W. LaFave, 2 *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.6(f) (1978).

Appellant attempts to compare the facts of this case to the facts of *Marcus* and *Lo-Ji.* We see no analogy. In both of those cases the authorities made little or no attempt to identify beforehand the materials to be seized. Instead, the executing officers exercised "unfettered discretion" to seize whatever materials they thought were obscene. This is the evil which the Supreme Court sought to avoid when it stated that the items to be seized must be described with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. at 485, 85 S.Ct. 511. Here, by contrast, the authorities have not exercised unfettered discretion, but have seized only those items specifically designated. We will not overturn solid police work for errors which resulted in no harm.

 Finally, Sovereign News argues that the warrant does not describe the seized business records with sufficient particularity. However, business records do not enjoy the same level of First Amendment protection as non-obscene books and magazines. *Stanford v. Texas,* 379 U.S. at 485 n. 16, 85 S.Ct. at 512 n. 16; *Marron v.*

*United States,* 275 U.S. 192, 198–99, 48 S.Ct. 74, 76–77, 72 L.Ed. 231 (1927); *United States v. Torch,* 609 F.2d at 1090. The magistrate was entitled to describe these items generically in the warrant, since any greater specificity with regard to these items is virtually impossible. *United States v. Cortellesso,* 601 F.2d at 33; *United States v. Jacobs,* 513 F.2d 564 (9th Cir. 1975). *Cf. Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

In conclusion, we find no constitutional error in either the issuance or execution of either warrant.

III. Subsequent Return of the Copies

 We now turn our attention to the subsequent disposition of the copies. "The general rule is that seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." *United States v. Francis,* 646 F.2d 251, 262 (6th Cir. 1981); *United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir. 1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). This is true whether or not the original seizure was lawful. *United States v. Francis,* 646 F.2d at 262, n. 7. Where the former defendant in criminal proceedings can show a property interest in the copies, the government must return them. Thus, the initial issue is whether Sovereign News can show a sufficient property interest in the copies to demand their return.

 The United States contends that Sovereign News does not have a property interest because the copies are "business records." This argument is based upon *United States v. King,* 528 F.2d 68, 69 (9th Cir. 1975) where the court refused to order the government to surrender transcripts of defendant's telephone conversations recorded by the government. Ruling on a Rule 41(e) motion the court held that defendant had not demonstrated entitlement to "lawful possession of the property which was illegally seized" as required by 41(e). *Id.* at 69. "He is no more the owner of the tapes and transcripts of the conversations made by the government than he is the owner of the mental impressions and memories of the government agents who intercepted the conversations." *Id.* In this case, however, Sovereign News has a property interest in the copies because the business records copied were the sole property of Sovereign News. Therefore, Sovereign News has a right to the return of the copies.

However, we must balance this right against the legitimate needs of the United States. We agree that the government has a right to copy documents lawfully in its possession. *United States v. Ponder,* 444 F.2d 816, 820 (5th Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972). *United States v. Chapman,* 559 F.2d 402, 405 (5th Cir. 1977). We also agree that "[a] defendant's motion for return of property will be unavailing where the government has a continuing interest in the property." *United States v. Francis,* 646 F.2d 251, 263 (6th Cir. 1981). *United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297, 1303 (3d Cir. 1978). This "continuing interest" can include a criminal or tax investigation in progress. *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *United States v. One Residence and Attached Garage, etc.,* 603 F.2d 1231, 1234 (7th Cir. 1979). However, we hold that when the government has held the copies for a "reasonable time" and has no investigations in progress, it must return the copies as well as the originals. *Mr. Lucky Messenger Service v. United States,* 587 F.2d at 17; *cf. United States v. Wallace & Tiernan Company,* 336 U.S. 793, 800–801, 69 S.Ct. 824, 828, 93 L.Ed. 1042 (1948).

The United States contends that it can keep the copies indefinitely since it seized the originals lawfully. It bases this conclusion on *United States v. Chapman,* 559 F.2d 402 (5th Cir. 1977). We decline to interpret *Chapman* so broadly. The *Chapman* court decided that the United States properly retained copies of gambling records to investigate tax questions concerning the defendants. Apparently, there was a legitimate use for the records. In the present case, we can conceive of no legitimate purpose for retaining these documents if the United

States contemplates *no actual use for them.* The government may not keep the copies purely for the sake of keeping them or because it is "hopeful" they may be relevant to some future investigation. *United States v. Moore,* 423 F.Supp. 858, 859–60 (S.D.W.Va.1976). This amounts to harassment.

Therefore, on remand, the District Court should require the government to show cause why it is *retaining these copies.* If the copies are needed for an ongoing or proposed specific investigation, the government is entitled to retain them. *See, e.g., United States v. Chapman, United States v. Murphy,* 413 F.2d 1129, 1140 (6th Cir.), *cert. denied,* 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed.2d 174 (1969). If the materials are being used for grand jury proceedings, we refer the court to the three tests set forth in *In re Grand Jury Proceedings,* 507 F.2d 963 (3d Cir. 1975). Those tests require a showing that the materials were (1) relevant to an investigation, (2) properly within the grand jury's jurisdiction, and (3) not sought primarily for another purpose such as harassment. *Id.* at 966. In order to protect the secrecy of the grand jury, the court may wish to hold the hearing *in camera. See Mr. Lucky Messenger Service v. United States,* 587 F.2d at 17; *Shea v. Gabriel,* 520 F.2d 879, 882 (1st Cir. 1975).

In summary, we hold that this court has jurisdiction to hear the case because the District Court's order denying return of the copies was a final order. Next, we hold that the searches of March 19 and 25, 1975 were valid and legal searches. Finally, we hold that since the appellant has demonstrated an undivided property interest in the copies of the business records, it is entitled to immediate return of the copies unless the government can demonstrate that the copies are necessary for a specific investigation. We therefore affirm the order of the District Court and remand the case for further proceedings consistent with this opinion.