**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0186n.06

**No. 17-5103**

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TREMAINE CARY, et al., | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Apr 10, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| THE CORDISH COMPANY | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:    MOORE, GIBBONS, and ROGERS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.**    Plaintiff-appellants Tremaine Cary, Andrew Peters Sr., Andrew Peters Jr., Jeremy Underwood, and Lewis Underwood appeal the district court's order granting summary judgment in favor of the Cordish Company on the plaintiffs' state-law race-discrimination claim. Because the plaintiffs have not shown that the Cordish Company is liable for the alleged discrimination, we affirm the district court's judgment.

I.

A.

On March 29, 2013, a group of men, including plaintiffs, gathered at the home of Cary's uncle to watch the University of Louisville play the University of Oregon in the Sweet 16 game of the men's NCAA basketball tournament.[1]    After Louisville won the game, the group decided

---

[1] The facts will be recited in the light most favorable to the plaintiffs. *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (In deciding whether to grant summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970))).

to celebrate. Someone suggested going to Fourth Street Live! ("FSL"), an open-air dining and entertainment venue in downtown Louisville, and the party made its way there.

The group arrived at the FSL entrance sometime between 1:55 and 2:20 in the morning. As they approached FSL, however, the large group split into two smaller ones. The men decided to split up because, as a group of African-American males, they were concerned about being stereotyped "as like a gang or something like that." DE 23, Jeremy Underwood Dep., Page ID 506. Cary's uncle, Haskell Whitlow; his cousin, Raymond Anderson; and Jeremy Underwood walked slightly ahead of Cary, Andrew Peters Sr., Andrew Peters Jr., and Lewis Underwood. This first group of Whitlow, Anderson, and Jeremy Underwood entered the venue without incident; however, when the second group approached a couple of minutes later, the hostess denied them admission. She told them that FSL was closed to new entrants for the night. The hostess did not make any race-based comments to the group, but some of the plaintiffs thought she appeared "distressed" and "frustrated." DE 19, Tremaine Cary Dep., Page ID 133; DE 20, Andrew Peters Sr. Dep., Page ID 231.

When Jeremy Underwood realized that his friends had not been admitted, he walked back toward the gate and asked the hostess why they couldn't enter the venue. The hostess explained that FSL was full and she could not let anyone else into the venue. Jeremy, however, indicated to the hostess that the venue was not full, and he had observed her allowing others inside the venue. The hostess then told him that he could not be readmitted, allegedly saying, "since you want to meddle with your friends, then you can stand out here with them." DE 23, Jeremy Underwood Dep., Page ID 512.

At some later point, the plaintiffs observed the hostess allow two young Caucasian women to enter FSL. Cary suggested going back to the hostess to ask to speak with a manager

and to film the hostess's response. The group approached the hostess again, and Andrew Peters Jr. took out his cell phone to film the interaction. Someone asked why the two Caucasian women had been allowed inside, and the hostess said that she had let them in to get their sister. According to the hostess, the two women were returning after they had changed their clothes to comply with FSL's dress code. Jeremy Underwood asked to speak to a manager, but the hostess would not allow him to do so. The hostess made eye contact with a nearby Metro Police officer, who then walked over to the scene to reiterate that FSL was closed and the plaintiffs would not be allowed inside the venue. The plaintiffs left FSL shortly thereafter.

B.

The plaintiffs filed suit in state court, alleging that the Cordish Company ("Cordish") and its agent violated Kentucky Revised Statute ("KRS") o§ 344.120, which makes it unlawful "for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation . . . on the ground of . . . race." Ky. Rev. Stat. Ann. § 344.120. Cordish removed the action to federal court based on diversity jurisdiction, since the plaintiffs are citizens of Kentucky and Cordish is a citizen of Maryland.[2] *See* 28 U.S.C. § 1332(a).

Cordish subsequently filed a motion for summary judgment. Proceeding under the assumption that this circuit analyzes KRS § 344.120 claims under the same framework as 42 U.S.C. § 1981 claims, Cordish argued that the plaintiffs failed to establish the essential elements of a § 1981 claim, namely, an attempt "to make or enforce a contract for services ordinarily provided by the defendant" and denial of the right to enjoy the benefits of said

---

[2] Cordish is incorporated in Maryland, and Maryland is its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

contractual relationship. *Miller v. Freedom Waffles, Inc.*, No. 3:06CV-159-H, 2007 WL 628123, at *5 (W.D. Ky. Feb. 23, 2007).

Cordish focused its motion primarily on the fact that the plaintiffs failed to show that they contracted for services ordinarily provided by the Cordish Company, maintaining that "the Cordish Company does not own, operate, or manage the Fourth Street Live!" and thus was not the proper defendant for this lawsuit. DE 24-1, Mot. for Summary J., Page ID 607, 612. In support, Cordish attached a declaration by Robert Fowler, in-house counsel for CTR Management, a real estate company that provides services to Louisville Galleria, LLC. In his declaration, Fowler states that Lousville Galleria, LLC—not Cordish—is the owner of FSL. Additionally, Fowler's declaration states that Cordish has no ownership interest in FSL or in Louisville Galleria, LLC, that Cordish has no employees working at or for FSL, and that Cordish did not employ the hostess or the police officer referenced in the plaintiffs' complaint. Because the plaintiffs had not produced any evidence to rebut Fowler's declaration, Cordish argued, there was no dispute of material fact as to whether Cordish "ordinarily provided" the services at issue.

In opposing Cordish's motion, the plaintiffs initially disputed whether 42 U.S.C. § 1981 was the correct framework for assessing their KRS § 344.120 claim, but ultimately conceded the issue for purposes of responding to Cordish's motion. The plaintiffs argued that Robert Fowler's testimony was "unreliable" because he "has no[] apparent employment relationship with Defendant Cordish." DE 32, Resp. to Mot. for Summary J., Page ID 718–19. To rebut Cordish's assertion that it did not "ordinarily provide" services at FSL, the plaintiffs attached an article from Louisville's *Courier-Journal*. The article, dated August 28, 2014, discussed a racial discrimination lawsuit filed against one of the bars in FSL. It identified Zed Smith as director of operations at FSL and quoted Smith's statement, "I am in charge of operations of Fourth Street

Live! and I happen to be African-American and the idea that I, or anyone at Fourth Street Live!, would tolerate any discrimination is beyond absurd." DE 32-1, Ex. B: *Courier-Journal* Article, Page ID 730. The plaintiffs described Smith as the Chief Operating Officer ("COO") of Cordish, but provided no support for that fact. According to the plaintiffs, since Smith was both the COO of Cordish *and* the director of operations at FSL, there was a genuine issue of material fact as to whether Cordish "owns, operates, or provides services at FSL." DE 32, Resp. to Mot. for Summary J., Page ID 718. Plaintiffs also attached the original FSL Development Agreement between Louisville Galleria, LLC, and the City of Louisville, noting that FSL, Louisville Galleria, LLC, and the Cordish Company all had the same business address and that an executive of Cordish was listed as a current officer of Louisville Galleria, LLC. The plaintiffs, who conducted almost no discovery in the case, appear to have obtained these sources from the Internet.

The district court granted Cordish's motion for summary judgment. It agreed with Cordish's suggestion that the § 1981 framework be applied to the plaintiffs' KRS § 344.120 claim[3] and rested its holding on the second element of a § 1981 prima facie case: that the plaintiffs failed to create a fact issue as to whether Cordish "ordinarily provided" the services at FSL, as they had not produced any admissible evidence rebutting Fowler's declaration that Cordish does not own FSL. It held that Smith's statement from the newspaper article was inadmissible double hearsay and that the FSL Development Agreement "at best shows that there is some relationship between The Cordish Company and Louisville Galleria, LLC." DE 38,

---

[3] Neither party challenges the district court's decision to use the § 1981 framework on appeal, although the appellants disputed its propriety in their response to Cordish's motion for summary judgment. As its justification for adopting this framework, the district court cited *Miller v. Freedom Waffles, Inc.*, No. 3:06CV-159-H, 2007 WL 628123 (W.D. Ky. Feb. 23, 2007). The court chose the § 1981 framework because the defendants in that case proposed it, the plaintiffs did not object, and the court was "unable to find any precedent that would dictate otherwise." *Id.* at *5. Because a federal court acting under diversity jurisdiction should apply state substantive law, the *Freedom Waffles* case does not provide a definitive analytical framework for KRS § 344.120 claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965).

Op. and Order, Page ID 851. But, the court concluded, simply showing that Cordish had some sort of relationship with FSL did not create a fact issue as to whether Cordish "ordinarily provided" services at FSL.

Plaintiffs filed a Notice of Appeal for the district court's order granting summary judgment to Cordish.[4]

## II.

### A.

As part of their argument that the court improperly granted summary judgment to Cordish, the plaintiffs claim that the court erroneously excluded Zed Smith's statement from the August 2014 *Courier-Journal* article. "While evidentiary questions are reviewed for abuse of discretion, the district court's conclusion that proffered evidence is hearsay under the Federal Rules of Evidence is a question of law which we review *de novo*." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

### B.

The plaintiffs claim that the district court improperly applied evidentiary rules and that Smith's statement is not hearsay. Even if it is hearsay, they argue, it falls under one of the hearsay exemptions in the Rules of Evidence. Neither of these arguments has merit.

The district court correctly concluded that Smith's statement was inadmissible hearsay and properly refused to consider it. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)

---

[4] Following the district court's grant of summary judgment, the plaintiffs filed a Rule 59(e) motion to vacate the judgment on the grounds of newly discovered evidence. This evidence consisted of material from Cordish's website that listed Zed Smith as a Cordish Company officer and contained statements indicating that Cordish was involved with FSL. The court denied plaintiffs' Rule 59(e) motion because the evidence was not previously unavailable, since the plaintiffs could have obtained this information at any point during the litigation. The court also pointed out that the materials presented the same hearsay issues as Smith's statement in the *Louisville-Courier* article, so they would not have changed the court's decision.

Because the appellants did not include the Rule 59(e) motion in their Notice of Appeal, we will not consider the district court's denial of the motion. *See Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 698 (6th Cir. 2006) ("We lack jurisdiction over issues that are the subject of post-judgment motions when those issues are not included in a notice of appeal.").

("[H]earsay evidence cannot be considered on a motion for summary judgment."); *see also Tranter v. Orick*, 460 F. App'x 514–15 (6th Cir. 2012) (holding that the district court properly refused to consider inadmissible hearsay when deciding a motion for summary judgment); *Jacklyn*, 176 F.3d at 927.

The plaintiffs seek to use Smith's statement, "I am in charge of operations of Fourth Street Live!" to show that Cordish had control over FSL, because they claim that Smith is the Chief Operating Officer of Cordish. DE 32-1., Ex. B: *Courier-Journal* Article, Page ID 730. In their brief, the only evidence plaintiffs cite as proof of Smith's position is his unauthenticated LinkedIn page, which states that he became the COO of the Cordish Company in January 2014. But Smith's LinkedIn page was not entered into the record before the district court. *Sovereign News Co. v. United States*, 690 F.2d 569, 571 (6th Cir. 1982) ("A party may not by-pass the fact-finding process of the lower court and introduce new facts in its brief on appeal."). Plaintiffs therefore request that this court take judicial notice of Smith's role as COO; however, judicial notice is inappropriate in this situation, as Smith's employment status is subject to reasonable dispute and does not otherwise meet the required judicial-notice criteria. *See* Fed. R. Evid. 201. Further, without any support in the record for their assertion that Smith is the COO of Cordish, his statement in the *Courier-Journal* adds almost nothing to the plaintiffs' argument that Cordish is responsible for the services provided at FSL. Nonetheless, we will proceed to analyze the hearsay issues presented by Smith's statement.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Plaintiffs first argue that Smith's statements are not hearsay under Rule 801(d)(2)(D), which defines as non-hearsay any statement "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship

and while it existed." They argue that because Smith was the COO of Cordish and made the statement about a race-discrimination incident at FSL, it was made by Cordish's agent on a matter within the scope of his employment. However, because there was no evidence in the record showing Smith's affiliation with Cordish apart from the statement itself (as explained previously, plaintiffs' citation to Smith's LinkedIn page cannot be considered), the plaintiffs could not show that Smith is an agent or employee of Cordish. *See* Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence or scope of the relationship under [801(d)(2)](D)."). The district court therefore correctly concluded that the statement is hearsay.

The plaintiffs next argue that the statement should be admitted under Rule 807's "residual exception," which allows a hearsay statement to be admitted if it: (1) has "equivalent circumstantial guarantees of trustworthiness"; (2) "is offered as evidence of a material fact"; (3) "is more probative" as evidence of that fact "than any other evidence that the proponent can obtain through reasonable efforts"; and (4) "admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807. But Smith's *Courier-Journal* statement fails to meet *any* of Rule 807's criteria. Its failure is particularly stark with respect to the third requirement. The plaintiffs could have obtained much more probative evidence of Cordish's involvement with FSL through reasonable efforts. They engaged in minimal discovery—they did not conduct any depositions and only sent one discovery request (which apparently was sent after the discovery period expired). The plaintiffs made almost no effort to obtain information about FSL's owner and operator by other means—and such means would have produced information far more probative on the issue than Smith's comment from a 2014 newspaper article.

The district court properly concluded that the statement is inadmissible hearsay.

III.

A.

Having reviewed the plaintiffs' evidentiary challenges, we turn to their argument that they have raised genuine issues of material fact sufficient to survive Cordish's summary judgment motion. When evaluating a district court's decision to grant summary judgment, we apply the *de novo* standard of review. *Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine dispute of material fact, this court must view the facts "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) and Fed. R. Civ. P. 56(e)).

B.

KRS § 344.120 states that "it is an unlawful practice for a person to deny an individual the full and equal enjoyment of . . . a place of public accommodation . . . on the ground of disability, race, color, religion, or national origin." Because the plaintiffs have not established a genuine dispute of material fact as to whether Cordish is responsible for denying them the

enjoyment of a place of public accommodation, we do not reach any of the parties' additional arguments.

To establish Cordish's liability, the plaintiffs offer Smith's statement, which we have determined to be inadmissible hearsay, and ask us to take judicial notice of numerous facts in a series of footnotes throughout their brief. These facts come from exhibits that plaintiffs attached to their brief—exhibits that are not part of the district court record and have not been authenticated. The plaintiffs were, in fact, instructed to remove all exhibits not in the record and take out any discussion of them from their brief. They have not done so, and it is improper for us to take judicial notice of any of these facts. Under Rule of Evidence 201, the court can take judicial notice of "a fact that is not subject to reasonable dispute," either because the fact "is generally known within the trial court's territorial jurisdiction," or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice is inappropriate here because many of the facts are subject to dispute, most if not all of them are not "generally known," and the sources' accuracy is questionable since the exhibits have not been authenticated.

In *Davis v. City of Clarksville*, we confronted a very similar fact pattern. There, the plaintiff asked the court "to take judicial notice of certain exhibits not filed in the district court" because he wanted "to rely on the substantive facts within those exhibits, many of which [were] disputed, to support his appeal." 492 F. App'x 572, 578 (6th Cir. 2013). That is exactly what the plaintiffs are trying to do here. The exhibits they cite consist of various agreements and other documents that they hope to use to prove that Cordish is liable for the alleged race discrimination they experienced, which is a fact that Cordish strongly disputes. The *Davis* court refused to take judicial notice under similar facts. *Davis*, 492 F. App'x at 578. Because the plaintiffs seek to

use judicial notice to introduce disputed facts from evidence that is not in the record, we decline their request. *Cf. Sovereign News Co.*, 690 F.2d at 571.

The plaintiffs therefore have no admissible evidence to show that Cordish was involved in "deny[ing] . . . [them] the full and equal enjoyment" of goods and services at FSL. *See* KRS § 344.120. There is thus no genuine issue of material fact as to whether Cordish was responsible for the alleged deprivation of the plaintiffs' rights, and summary judgment for Cordish is appropriate.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.