861 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald M. SANTMIRE, Defendant-Appellant.
 No. 88-3168.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ronald M. Santmire (Santmire) appeals his conviction for knowingly receiving through the mail a visual depiction of minors engaged in sexually explicit conduct in violation of 18 U.S.C. Sec. 2252(a)(2). He challenges the sufficiency of the evidence to support the knowledge and mailing elements of the offense, and also obliquely asserts that he was entrapped by the government into committing the offense. The evidence sufficiently demonstrates Santmire's predisposition to commit the crime and further supports the conclusion that he had adequate knowledge that the materials ordered and subsequently received involved sexually explicit conduct by minors. The mailing to Santmire was accomplished by controlled delivery and did not involve commingling of the child pornography with other regular mail. There was sufficient evidence of mailing to support Santmire's conviction by the jury. We affirm.
 
 
 2
 Postal Inspector Paul Hartman, assigned to investigate the use of the United States mails to promote child pornography, received a partial customer list seized from an alleged distributor of child pornographic materials by law enforcement officers in Los Angeles, California. Hartman, believing that the individuals whose names appeared on the list might be predisposed to mailing and receiving child pornography, initiated test correspondence with several of those individuals, including Santmire. Hartman began by sending Santmire a letter purporting to be from the president of a fictional research company, "Research Facts." The letter sought responsive information from individuals interested in "youthful lads and lasses of neophyte age." Santmire responded to this correspondence with a handwritten letter received by Hartman on September 11, 1985, in which Santmire requested more information and questioned how Research Facts had obtained his name and address. He also provided Research Facts with his new address.
 
 
 3
 In response, on October 16, 1985, Hartman sent a second letter to Santmire purporting to be from Research Facts and enclosed a questionnaire. Santmire completed the questionnaire and returned it through the mails to Hartman. His answers to the questionnaire indicated that he frequented adult theaters or book stores on a monthly basis, preferred both "soft-core" and "hard-core" materials, purchased sexual materials between six and twelve times a year from adult book stores, adult theaters, and mail order outlets, and would purchase sexual materials from a mail order outlet which regularly published a catalog of offerings. Santmire further indicated that, from a wide range of materials available, he preferred those showing preteen heterosexual and homosexual sex involving two males and one female, and that he believed that the best age for an initial sexual encounter was between nine and fifteen years. The questionnaire stated that it was not necessary for Santmire to identify himself, but that by doing so, he might be entitled to receive additional materials or benefits from the organization which commissioned the survey. Santmire included his name and address on the questionnaire.
 
 
 4
 After Santmire failed to respond to several other letters, Hartman sent Santmire a letter purporting to be from "Frank O'Grady" which informed Santmire that O'Grady had received his name from the Ohio Valley Action League and "wonder[ed] whether ... we might share the same interest [in] the younger, more beautiful things in life." Santmire responded that he, too, had some "interest in unique collectibles and younger more beautiful thang [sic] in life" and wrote "[b]ut I hope that you can see with the laws we have to be vary [sic] careful. So if you have some thang [sic] you would like to share lat [sic] me know. I would like to see it or you can send me your phone no. so I may call you." "O'Grady" then sent Santmire a letter enclosing a nude photograph of a minor female, which did not depict any sexual activity.[1]
 
 
 5
 Santmire responded by sending "O'Grady" a similar photograph and expressed the hope in his accompanying letter that the two might exchange further materials. In April 1986, Hartman mailed Santmire a letter from a fictitious Virgin Islands corporation which advertised specific adult and child pornographic video tapes. The letter advised that a catalog for the Kinder Climax Collection was available upon request. An order form was included with the letter. Santmire responded by completing the order form requesting the Kinder Climax Collection catalog.
 
 
 6
 Thereafter, Hartman mailed the Kinder Climax Collection catalog, which described six separate video tapes depicting minors engaged in sexually explicit conduct. Santmire returned a fifty dollar money order and ordered a tape which the catalog described as containing minor males engaged in various sexually explicit acts.
 
 
 7
 Hartman reproduced a cassette tape consistent with the advertising brochure and inscribed a unique number for identification purposes on the requested tape. He placed the video cassette in a mailing carton, and affixed to it both a mailing label bearing Santmire's address in Findlay, Ohio, and the return address of the Virgin Islands corporation, together with postage in the amount of $2.43 and a Virgin Islands post office postmark. The package was then transported by Postal Inspectors from Cleveland to the post office in Findlay, Ohio, where it was first placed in Santmire's post office box. The package was later removed from Santmire's post office box and labeled as registered mail by the Postal Inspector. This would require Santmire to come to the post office and make it easier to observe his retrieval of the package. Santmire was contacted by telephone and told that he had received a registered package. He then claimed the package by affixing his signature to the delivery receipt at the post office where he was arrested.
 
 II. Entrapment
 
 8
 Santmire claims that the evidence demonstrates that he did not have the specific intent to commit the crime of which he was convicted because the government approached him without solicitation and induced and tricked him into violating the law. The focus of the entrapment inquiry is upon the defendant's predisposition to commit the offense, which centers upon "whether law enforcement officials have implanted the criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who is already predisposed to do so." United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985). When undisputed evidence demonstrates a "patently clear" absence of predisposition, the defendant can claim entrapment as a matter of law. Pennell, 737 F.2d at 534-35 (citing United States v. Henciar, 568 F.2d 489, 491 (6th Cir.1977), cert. denied sub nom. Albert v. United States, 435 U.S. 953 (1978)). When there is evidence of predisposition, as is clearly true in this case, the issue of entrapment is for the trier of fact. Henciar, 568 F.2d at 491-92.
 
 
 9
 We recently have affirmed three convictions under 18 U.S.C. Sec. 2252(a)(2) resulting from similar activities of Inspector Hartman in the face of challenges based upon entrapment. In those cases, Hartman's investigatory techniques parallel those used in the present case. See United States v. Nelson, 847 F.2d 285 (6th Cir.1988); United States v. Burkhart, No. 86-3224 (6th Cir.Dec. 23, 1986) (unpublished); United States v. Davis, No. 85-3854 (6th Cir. Oct. 16, 1986) (unpublished). In Nelson, defendant did not respond to any of Hartman's initial contacts. Eventually, however, Nelson ordered child pornography from the fictitious Virgin Islands corporation. This court found sufficient evidence of predisposition to raise a question of fact for the jury on the issue of entrapment in a letter from Nelson which had been seized from his home and formed the basis for the commencement of Hartman's activities. 847 F.2d at 287-88.
 
 
 10
 The investigatory techniques in question have not been disapproved by this court in these cases, and the only question is whether the evidence sufficiently raises a question of fact for the jury on the issue of Santmire's predisposition to receive child pornographic material through the mails. As did the defendant in Burkhart, Santmire makes too much of the fact that contact was initiated by the government, because the law of entrapment clearly permits the government to provide the opportunity for the commission of a crime. Guided by our prior decisions in this area, we find that there was no entrapment as a matter of law.
 
 II. Sufficiency of the Evidence
 
 11
 The description of the video tape specifically ordered by Santmire leaves little doubt that he was aware of the tape's contents. That evidence was sufficient for a rational trier of fact to conclude that Santmire had knowledge that he had ordered and could expect to receive through the mail materials depicting minors engaged in sexually explicit conduct. Santmire next challenges the sufficiency of the evidence to support the jury's finding that the video tape was mailed as required by the statute.
 
 
 12
 The evidence demonstrates that the package was properly postmarked and was handled, delivered, and transported by postal service employees. It was delivered to a United States post office and was received by Santmire from a postal service window clerk. The packaged video tape clearly constituted "mail," and the special form of delivery conducted by postal service employees should not alter the conclusion that the package was sent through the mails as required by the statute. See United States v. Fisher, 464 F.2d 581 (9th Cir.1972) (holding that decoy letter addressed and sealed with proper postage within the area of an official station where mail was being processed was "mail" within the statute relating to theft of mail).
 
 
 13
 Accordingly, we AFFIRM the conviction in this case.
 
 
 
 [1]
 As the government notes, the mailing of this photograph was not a violation of 18 U.S.C. Sec. 2255(2)