**UNITED STATES of America, Plaintiff,**

v.

**William A. PICKARD III and Arnold L. Hollingsworth, Jr., Defendant.**

**No. IP 91–130–CR–01.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 14, 1992.

**156**

Mark A. Stuann, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff.

James E. Evans, Jr., Evans and Evans, Springdale, Ark., Bradley L. Williams, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendant.

ENTRY

BARKER, District Judge.

William A. Pickard III has filed a motion to dismiss the indictment against him on the basis that the government's conduct was "outrageous;" Pickard claims that the government targeted him for investigation without a reasonable basis, manufactured a crime through repeated requests and coercion, and inflated the seriousness of the offense. Pickard's motion has been fully briefed, and upon review of the parties' filings and record, the motion to dismiss is DENIED.

*I. Discussion*

Outrageous Conduct

Pickard moves to dismiss the indictment claiming, "investigative conduct which is so pervasive as to amount to the manufacture of a criminal enterprise from start to finish violates the Due Process Clause." "Outrageous government conduct," as compared to entrapment, Pickard continues, focuses on the government's conduct, rather than a defendant's state of mind. Outrageous conduct, Pickard concludes, bars the government from seeking a conviction.

In this circuit, the outrageous conduct doctrine is currently of doubtful validity. *United States v. White,* 950 F.2d 426, 431 (7th Cir.1991); *United States v. Sababu,* 891 F.2d 1308, 1326 (7th Cir.1989). Although the doctrine (barely) endures, the Seventh Circuit has recently noted that neither it nor the Supreme Court has reversed a conviction on this ground, *United States v. White,* 950 F.2d at 431; *United States v. Sababu,* 891 F.2d at 1326; and has suggested that perhaps it never will:

> Whether the Supreme court itself ultimately will validate the doctrine of outrageous conduct seems doubtful. In *Hampton v. United States,* [425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)] a three judge plurality opined that "[t]he remedy of the criminal defendant with respect to the acts of governmental agents, which far from being resisted, are encouraged by him, lies solely in the defense of entrapment."

*United States v. Duncan,* 896 F.2d 271, 275 (7th Cir.1990); *accord United States v. Sababu,* 891 F.2d at 1326 ("the continued vitality of the doctrine is questionable").[1]

■■■ The doctrine of outrageous conduct, to the extent it remains, is narrow in scope. *United States v. Jacobs,* 751 F.Supp. 733 (N.D.Ill.1990). Great leeway is granted law enforcement agents, and absent a violation of an independent constitutional right, governmental misconduct must be "truly outrageous" before due process considerations will be implicated to prevent a conviction. *United States v. Kaminski,* 703 F.2d 1004, 1009 (7th Cir.1983). Whether government conduct is "truly outrageous" is a question of law. *United States v. Richter,* 610 F.Supp. 480, 498 (N.D.Ill.1985) *aff'd* 785 F.2d 312 (7th Cir. 1986); *see United States v. Jacobs,* 751 F.Supp. at 737.

"It is well established that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of an offense does not defeat the defense. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *United States v. Sababu,* 891 F.2d at 1327 (citing *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)) (quotations omitted). An offer "of a reasonable inducement" is a proper means of investigating crime. *Id.* (citing *United States v. Kaminski,* 703 F.2d at 1004). Although courts examine closely when the government is extensively involved in the suspected illegal actively, such as when it supplied a defendant with chemicals, glassware, and a farmhouse to produce narcotics, *see United States v. Twigg,* 588 F.2d 373 (3rd Cir.1978), "it may be safely said that investigative officers and agents may go a long way in concert with the individual without being deemed to have acted so outrageously as to violate due process." *United States v. Sababu,* 891 F.2d at 1327 (citing *United States v. Kaminski,* 703 F.2d at 1009). Even still, "extensive government involvement in

criminal activity, without more, does not constitute the type of coercion ... or other egregious or outrageous government conduct rising to the level of a due process violation." *United States v. Dyman,* 739 F.2d 762, 769 (2d Cir.1984) (citations omitted), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985).

Pickard claims that the government's conduct was "truly outrageous" in that it "control[ed]" the enterprise from the outset, citing *United States v. Dyman.* Pickard claims, "the impetus for the offense and the way it was handled sprang from the mind of [the federal agent]." Summarily, Pickard argues:

> [Federal agents] created the opportunity for the transactions, made the representations which rendered the transactions criminal, continually steered the nature of the relationship to "smurfing" after defendant Pickard made it clear on multiple occasions that he did not want to do that, kept contacting Pickard after three refusals, supplied the funds to be "laundered," directed him to specific banks, and was the sole "consumer" of the unlawful scheme.

The government claims, however, that Pickard did not express reluctance to participate in a money laundering scheme, and that it was Pickard, not the agents, who suggested the laundering method (whereby the money would be split into numerous bank wires, traveler's checks, or money orders). The government alleges that Pickard was predisposed to launder money and that it merely provided Pickard with an opportunity to commit the criminal offense; that Pickard "was merely invited, under circumstances in which he could easily have ignored the solicitation."

■■■ Although the level of government control in the operation of the money laundering scheme, the extent to which Pickard refused to participate in the scheme, and whether Pickard had a predisposition to commit the charged offense are contested

---

**1.** The Supreme court recently declined the opportunity to address the validity of this defense when it granted a limited writ of certiorari in *Jacobson v. United States,* 893 F.2d 999 (8th Cir.), *vacated,* 899 F.2d 1549 (8th Cir.), *en banc,* 916 F.2d 467 (8th Cir.1990), *cert. granted in part,* —— U.S. ——, 111 S.Ct. 1618, 113 L.Ed.2d 716 (1991).

issues of material fact, Pickard has not presented facts "sufficient to raise a significant doubt about the propriety of the government's actions," and a pre-trial evidentiary hearing is not necessary. *United States v. Swiatek,* 819 F.2d 721, 725 (7th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987); *see United States v. Richter,* 610 F.Supp. at 498 (conflicting versions of who engineered the details of the money laundering operation insufficient to either dismiss the indictment or require a preliminary hearing); *see also United States v. Jacobs,* 751 F.Supp. at 739 (persistent inducements, absent conduct that amounts to "veiled threats" with hints at "syndicate pressure," do not rise to the level of outrageous misconduct). Pickard's allegations simply fall short of what this court would characterize as "truly outrageous" as a matter of law. *See United States v. Thoma,* 726 F.2d 1191 (7th Cir.), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

### Reasonable Suspicion and Targeting a Defendant

■ Pickard asserts that to satisfy due process, the government must have reasonable suspicion of criminal conduct before targeting an individual for an undercover investigation. Acknowledging that the Seventh Circuit rejected this argument in *United States v. Miller,* 891 F.2d 1265, 1269 (7th Cir.1989), Pickard notes that a similar issue will likely be decided during this Court's term in *United States v. Jacobson.*

Reasonable suspicion is not required before federal agents initiate an undercover investigation. *United States v. Miller,* 891 F.2d at 1269. We disagree with Pickard, however, about whether the Supreme Court will likely decide this issue in *Jacobson,* for although the outrageous conduct issue was addressed in the Eight Circuit's *en banc* opinion and in the petition for certiorari, the Court's grant of certiorari is limited to another, single issue: whether a defendant has been entrapped as a matter

of law when the government has persistently and repeatedly attempted to persuade the defendant to receive child pornography through the mail. *Jacobson v. United States, supra; see Arguments Before the Court,* 60 U.S.L.W. 3393, 3394 ("O'Conner: Isn't that the same as requiring reasonable suspicion beforehand that the target was inclined to commit the crime? Moyer: Yes. O'Conner: But we didn't grant cert on that question."). Nevertheless, the current law in this circuit is clear, and Pickard's motion to dismiss the indictment on the basis that the Supreme Court might decide an issue similar to the one presented here is without merit.

### Manipulation of the Severity of the Offense

Pickard claims that the government should have arrested him in April 1991, yet it continued to supply him larger amounts of money and now he is subject to the enhanced-felony provisions of 31 U.S.C. §§ 5322(b) and a three-level increase under Sentencing Guideline §§ 2S1.1(b)(2) and 2S1.3(b)(2). Pickard claims that this conduct usurped the court's fact-finding function, and argues that all counts reflecting transactions that took place after April 1991 [2] should be dismissed.

Although not recognized by any circuit as a viable argument, the Eight Circuit has stated, "where outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this contention might bear fruit." *United States v. Lenfesty,* 923 F.2d 1293 (8th Cir. 1991), *cert. denied,* — U.S. —, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). Assuming that such a defense exits, the crux of Pickard's "sentencing entrapment" argument, *see United States v. Stuart,* 923 F.2d 607, 614 (8th Cir.1991), *cert. denied,* — U.S. —, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991), is that there is no evidence that he was predisposed to launder money in the amounts the agents supplied him, that there was entrapment as a matter of law.

■ Entrapment as a matter of law exists when there is no evidence of predis-

---

**2.** Counsel for Pickard stated "at a minimum dismissal of counts reflecting transactions after April of 1990," but this court interprets that date notation as a typographical error.

position from the uncontroverted evidence. *United States v. Lazcano,* 881 F.2d 402, 405 (7th Cir.1989); *United States v. Thoma,* 726 F.2d at 1197. The government alleges that Pickard was predisposed to launder large amounts of money, claiming, "the facts of this case will present, at most, a substantial question of fact for the jury." Although the level of Pickard's predisposition is a contested issue of material fact, there is at least some evidence of predisposition, and Pickard has failed to show with sufficient clarity that he was predisposed to commit only a lessor offense as a matter of law. *Id; see United States v. Nelson,* 847 F.2d 285, 287 (6th Cir.1988). Pickard is not entitled to a dismissal or a pre-trial evidentiary hearing on the issue of "sentencing entrapment." *Id.*

### Discovery of Internal Manuals

In his motion to dismiss, Pickard moves this court to compel the discovery of "internal guidelines on the conduct of investigations," "documents relating to the decision to suspend the contacts by [federal agents] in July or August 1990, then resume them in February of 1991," "documents relating to the decision to investigate this case from the Indianapolis office," and "documents relating to the amount of money the defendants would be permitted to 'launder' before arrest." Pickard claims that these documents are discoverable because they are relevant to his claims of entrapment and outrageous conduct.

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure requires the government to "permit the defendant to inspect and copy [government documents] ... which are material to the preparation of the defendant's defense...." A district court may deny such a motion, however, when the defendant fails to make "at lease a prima facie showing that the requested items are material to his defense." *United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir.1991).

■ In a separate ruling, this court has denied Pickard's Rule 16 motion on the basis that he failed to show that the requested documents are material either to

his entrapment or outrageous conduct defense. The defense of entrapment requires a showing that the government induced the defendant to perform a criminal act he was not predisposed to commit. *United States v. Molinaro,* 877 F.2d 1341, 1349 (7th Cir. 1989). "[T]he defense of entrapment focuses upon whether the Government's actions implanted the criminal design in the mind of an otherwise unpredisposed person." *United States v. Thoma,* 726 F.2d at 1196. "Entrapment is concerned with the predisposition of the defendant and not with the conduct of the government." *United States v. Reeves,* 892 F.2d 1223, 1226 (5th Cir.1990).

■ This court has allowed the discovery of, or at least access to, all audio recordings of conversation between Pickard and the government agents that relate to the charged offense. Any evidence of government inducement is available within those tapes. However, because it is the state of mind of the defendant, and not the government conduct, at issue in an entrapment defense, the aforementioned internal operations documents are not material to Pickard's entrapment defense. *United States v. Reeves,* 892 F.2d at 1226.

■ Nor is Pickard entitled to such documents on the basis that they are material to his outrageous conduct defense. The outrageous conduct defense "requires an objective review of the government's conduct." *United States v. Jacobs,* 751 F.Supp. 733 (N.D.Ill.1990). Since outrageous conduct is determined objectively, it is irrelevant whether a government agent followed its agency's policy—assuming such policy manuals and procedure memorandums even exist. *See United States v. Haberman,* Nos. 91–30068, 91–29516, 1991 WL 259996, at *1991 U.S.App.LEXIS 29516, at *12 (9th Cir. Nov. 5, 1991) (949 F.2d 399 [Table]) (unpublished).

■ Further, this court denied Pickard's motion for discovery on the additional basis that the request was on balance too vague, broad and intrusive. The discovery request was not sufficiently specific—asking, for example, for the disclosure of "all

regulations, policy directives or internal memoranda, whether published or unpublished, pertaining to the conduct of money laundering investigations by the U.S. Customs Service." Such a disclosure would unnecessarily consume the time of the government and of the court, and would likely jeopardize future investigations by requiring the government to disclose sensitive information relating to the methods in which Customs agents pursue their investigations.

## II. Conclusion

Pickard's motion to dismiss the indictment based on outrageous conduct is denied, Pickard's motion for an evidentiary hearing is denied, and to the extent Pickard has renewed its motion to compel discovery, that motion is denied.

It is so ORDERED.