978 F.2d 717
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Gonzalez MACIAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Jose VILLA-GARCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Constantino DROETTI, Defendant-Appellant.
 Nos. 91-50773, 91-50777 and 91-50788.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1992.*
Decided Oct. 27, 1992.
 
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Macias, Villa-Garcia, and Droetti were convicted on several counts of possession and conspiracy to possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1). Droetti was also convicted of knowingly carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Droetti challenges his firearm conviction; all three appeal their sentences. We affirm.
 
 I.
 
 3
 Droetti challenges his conviction for knowingly carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). "We review the record as a whole, in the light most favorable to the government.... [If] 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' ... we are required to affirm." United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988) (emphasis in original) (citations omitted). However, because Droetti did not move for acquittal at the end of the bench trial, we need only review for plain error. United States v. Floyd, 945 F.2d 1096, 1098 (9th Cir.1991), amended, 956 F.2d 203 (9th Cir.1992). We affirm the conviction under either standard of review.
 
 
 4
 To prove a violation of § 924(c)(1), the government must establish (1) "the firearm at issue was 'related to,' or played some role in, the underlying crime," and (2) "the defendant ... 'used' or 'carried' the firearm." United States v. Torres-Medina, 935 F.2d 1047, 1048-49 (9th Cir.1991). Detective Smith and Officer Benedetti testified they searched Droetti after his arrest and found a loaded revolver in his waistband. Droetti's son-in-law testified he saw Droetti minutes before the arrest and did not notice a gun, and that a police officer emerged from Droetti's room several hours after the arrest carrying the gun in a plastic bag. The court resolved the conflict by crediting the officers' testimony, and upon review of the record we cannot say the court erred. The officers' testimony would allow a rational trier of fact to find beyond a reasonable doubt that Droetti violated § 924(c)(1).
 
 II.
 
 5
 At sentencing, the district court set the base offense level at 36 because defendants conspired to sell 50 kg. of cocaine. U.S.S.G. §§ 2D1.1(a), (c)(4); 2D1.4. The court gave each defendant a two-level reduction for acceptance of responsibility, id. at § 3E1.1, sentenced Droetti and Macias to 151 months, and sentenced Villa-Garcia to 121 months. Droetti also received 60 months on the gun charge, and each defendant received a five-year term of supervised release. We review the district court's interpretation and application of the sentencing guidelines de novo, United States v. Kohl, No. 91-30119, Slip op. 9713, 9717 (9th Cir. Aug. 12, 1992); United States v. Blaize, 959 F.2d 850, 851 (9th Cir.1992), and review its factual findings for clear error, United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 A.
 
 6
 U.S.S.G. § 2D1.4 provides, "If a defendant is convicted of a conspiracy ... involving a controlled substance, the offense level shall be the same as if the object of the conspiracy ... had been completed." Application note 1 states that, "where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." The district court found that the defendants intended to produce and were reasonably capable of producing 50 kg. Each defendant challenges these findings.
 
 
 7
 "[T]he relevant consideration [in reviewing a finding of reasonable capability is] not probable success but whether the conspiracy was capable of producing the amount in question." United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991). "Logistical problems" will not undermine a finding of reasonable capability. Id.
 
 
 8
 Defendants argue their straitened economic circumstances and their inability to produce 50 kg. in one place at one time demonstrate that the court's finding was clearly erroneous.
 
 
 9
 Because defendants acted as brokers and were not required to provide any money of their own, their economic circumstances were not determinative. Moreover, defendants' ultimate failure to produce 50 kg. does not demonstrate they were not reasonably capable of producing that amount. Statements made by the defendants in the course of the conspiracy reveal that their failure to produce 50 kg. resulted from (1) the government's refusal to part with the money and (2) their supplier's fear of a "sting operation," which led him to request the money "up front" and to insist on breaking the transaction into 10 kg. increments.
 
 
 10
 None of the defendants denies they negotiated for the sale of 50 kg. and repeatedly assured Rafael and the undercover agents that they could produce that amount. Rafael testified he saw several kilograms during the course of negotiations and, except for his sighting of 10 kg. in the trunk of the car, each sighting was corroborated by undercover officers or by samples provided to Rafael by the defendants. On this evidence, the court's finding that defendants were reasonably capable of producing 50 kg. was not clearly erroneous and Droetti's claim that his due process rights were violated by finding him responsible for a quantity of cocaine "that is more likely than not excessive" must be rejected. We also reject Droetti's claim that the court violated his due process rights by failing to make specific findings to support its determination that he was reasonably capable of producing 50 kg. The court's findings of fact are sufficiently specific.
 
 
 11
 Because the record demonstrates that undercover agents corroborated Rafael's testimony, we do not reach Droetti's claim that the testimony of a single informant is insufficient evidence of the amount of drugs involved in a conspiracy. Nor does the record support Droetti's claim that Rafael's testimony was impeached. Although defendants raised doubts about some aspects of Rafael's testimony, they were unable to undermine his testimony as to the amounts of cocaine he observed or his account of the negotiations. Droetti also cites the statement in Townsend v. Burke, 334 U.S. 736, 741 (1948), that "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct ... renders the proceedings lacking in due process." Droetti provides no support for his contention that his sentence was based on a "materially false" foundation.
 
 
 12
 Finally, because we affirm the district court's finding that the defendants were reasonably capable of producing 50 kg., we need not address Macias' claim that the district court would not be able on remand to rely on Rafael's sighting of 10 kg. in the trunk of the Oldsmobile.
 
 B.
 
 13
 Droetti and Villa-Garcia observe that 50 kg. of cocaine was the minimum amount needed to increase the base level of their offenses from 34 to 36 and argue the government engaged in "sentencing entrapment" by instructing Rafael to offer to purchase this amount from the defendants. Defendants do not argue they lacked the predisposition to possess and distribute some amount of cocaine, but argue they would not have considered trafficking in 50 kg. had the government not suggested that amount and then "mesmerized" them into agreeing to supply it by displaying $1 million in cash.
 
 
 14
 Assuming "sentencing entrapment" could be a valid challenge to a sentence under the guidelines in some circumstances,[1] defendants have failed to demonstrate they were victims of such "entrapment." There is no evidence the government agents overbore the will of any defendant, or that defendants were not predisposed to deal in large amounts of cocaine.
 
 
 15
 Affirmed.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Only one court has recognized a claim of "sentencing entrapment." In United States v. Barth, 788 F.Supp. 1055, 1057 (D.Minn.1992), the court found that the Sentencing Commission "has failed to adequately consider the terrifying capacity for escalation of a defendant's sentence based on the investigating officer's determination of when to make the arrest," and departed downward because the arresting officer deliberately delayed arresting the defendant until he had purchased enough contraband to move from a five year minimum sentence to a ten year minimum. Other courts faced with the issue have not reached the question of the validity of such a claim because the defendant failed to provide sufficient evidence of entrapment. See, e.g., United States v. Panet-Collazo, 960 F.2d 256 (1st Cir.1992); United States v. Connell, 960 F.2d 191 (1st Cir.1992); United States v. Lenfesty, 923 F.2d 1293 (8th Cir.1992); United States v. Stuart, 923 F.2d 607 (8th Cir.1991); United States v. Pickard, 787 F.Supp. 155 (S.D.Ind.1992)